**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| WILLIAM GLASPER, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No. _____ |
| vs. | |
| BLACKBAUD, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff, William Glasper ("Plaintiff"), on behalf of himself and all others similarly situated, alleges the following against Defendant Blackbaud, Inc. ("Blackbaud" or "Defendant") seeking monetary damages, restitution, and declaratory relief for the Class, as defined below. Plaintiff makes the following allegations upon information and belief, except as to his own actions, the investigation of his counsel, and facts that are a matter of public record.

## NATURE OF THE ACTION

1.      Defendant Blackbaud is a cloud computing software company based in Daniel Island, Charleston, South Carolina.  Its products focus on fundraising, website management, CRM, analytics, financial management, ticketing, and educational administration. This is a class action lawsuit brought by Plaintiff on behalf of himself and all other persons harmed by the May 2020 ransomware attack and data breach ("Data Breach") of multiple education institutions, healthcare and religious organizations, non-profit companies, and other organizations (collectively "Clients") whose data and servers were managed, maintained, and secured by Defendant Blackbaud. As a result of the Data Breach, Plaintiff and hundreds of thousands of other Class Member users

suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the ransomware attack.

2.     The Clients' data and servers contained identifying, sensitive, and personal data from students, patients, donors, and other individual users, including Plaintiff's. Additionally, Plaintiff and Class Members' sensitive personal information— which was entrusted to Defendant, its officials and agents—was compromised and unlawfully accessed due to the Data Breach. Information compromised in the Data Breach included a copy of a subset of information retained by Blackbaud, including name(s), addresses, phone numbers, and other personal information. True and accurate copies of the notices of data breach emailed to Plaintiff (collectively "Notices"), and Defendant's exemplar Notice is available on its website.[1] Contrary to the representations in the Notices regarding the type of accessed information, it is believed based on statements by Defendant's Clients directing Class Members to monitor suspicious activity of their credit and accounts that Social Security Numbers, credit card numbers, bank account numbers, and additional personally identifiable information (collectively "Private Information" or "PII") may also have been compromised.

3.     Plaintiff brings this class action lawsuit on behalf of those similarly situated, in order to, (1) address Defendant's inadequate safeguarding of Class Members' Private Information, which Defendant managed, maintained, and secured; (2) for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access of an unknown third-party; (3) for failing to identify all information that was accessed; and (4) for failing to provide Plaintiff and Class Members with any redress for the Data Breach.

---

[1] https://www.blackbaud.com/securityincident (last accessed Sept. 25, 2020).

4.      Defendant maintained and secured the Private Information in a reckless manner, including, *inter alia*, failing to safeguard against ransomware attacks. In particular, the Private Information was maintained on Defendant's computer network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

5.      In addition, Defendant and their employees failed to properly monitor the computer network and systems that housed the Private Information; failed to implement appropriate policies to ensure secure communications; and failed to properly train employees regarding ransomware attacks. Had Defendant properly monitored their network, security, and communications, it would have discovered the cyberattack sooner and/or prevented it altogether. In fact, Blackbaud has announced it has "already implemented changes to prevent this specific issue from happening again."[2] In other words, had these changes been in place previously, this incident would not have happened and Plaintiff and Class Members' Private Information would not have been accessed.

6.      Plaintiff and Class Members' identities and Private Information are now at risk because of Defendant's negligent conduct as the Private Information that Defendant collected and maintained is in the hands of data thieves. Defendant cannot reasonably maintain that the data thieves destroyed the subset copy simply because Defendant paid the ransom and the data thieves confirmed the copy was destroyed. In fact, the notices advise the affected individuals to monitor their own credit, suspicious account activity, and notify the school or non-profit of suspicious

_____

[2] Id. (last accessed Sept. 25, 2020).

activity related to his or her credit. Despite this, Defendant has not offered any manner of redress, including, *inter alia*, credit monitoring.

7.     Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Plaintiff and Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names, but with another person's photograph, and giving false information to police during an arrest.

8.     As a result of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members, at their own cost, must now and in the future closely monitor their financial accounts to guard against identity theft.

9.     Consequently, Plaintiff and Class Members will also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

10.     Through this Complaint, Plaintiff seeks to remedy these harms on behalf of himself and all similarly-situated individuals, whose Private Information was accessed during the Data Breach.

11.     Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

12. Accordingly, Plaintiff brings this action against Defendant seeking redress for its unlawful conduct, and asserting claims for: (i) negligence, (ii) unjust enrichment (iii) declaratory judgment and (iv) negligence *per se*.

## PARTIES

13. Plaintiff is a resident and citizen of Minneapolis, Minnesota.

14. Defendant Blackbaud, Inc. is a Delaware corporation with its principal place of business located on Daniel Island, Charleston County, South Carolina.

15. Defendant manages, maintains, and provides cybersecurity for the data obtained by its clients who are, *inter alia*, education institutions, healthcare and religious organizations, and non-profit companies, including Allina Health hospitals and clinics, which maintained Plaintiff's Private Information and Plaintiff's Private Health Information (or "PHI").

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

17. This Court has personal jurisdiction over this action because Defendant holds its principal place of business in this District, has sufficient minimum contacts with this District and has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

18. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because the only Defendant resides in this District.

## DEFENDANT BLACKBAUD

19.    Since originally incorporating in 1982,[3] Blackbaud has become "the world's leading cloud software company powering social good." This includes providing its clients with "cloud software, services, expertise, and data intelligence…" Defendant is a publicly traded company on the New York Stock Exchange (NASDAQ: BLKB), with clients that include "nonprofits, foundations, corporations, education institutions, healthcare institutions, and the individual change agents who support them."[4]

20.    In 2019, Blackbaud reported that it had "45,000 customers located in over 100 countries," with a "total addressable market (TAM)… greater than $10 billion."[5]

21.    In the ordinary course of doing business with Defendant's clients, individuals are regularly required to provide Defendant's clients with sensitive, personal and private information that is then stored, maintained, and secured by Defendant. This Private Information includes or may include the following personal data:

- Name, address, phone number and email address;
- Date of birth;
- Demographic information;
- Social Security numbers;
- Credit card account numbers;
- Bank account numbers;
- Educational history;
- Healthcare records or information;

---

[3] https://investor.blackbaud.com/static-files/9cd70119-4e13-4d47-b068-3c228c580417 (last accessed Sept. 25, 2020).
[4] https://www.blackbaud.com/company (last accessed Sept. 25, 2020).
[5] https://investor.blackbaud.com/static-files/9cd70119-4c13-4d47-b068-3c228c580417 (last accessed Sept. 25, 2020).

- Insurance information and coverage;

- Photo identification;

- Employer information;

- Donor contribution information; and

- Addresses, place of birth, mother's maiden names, passwords or other PII.

22.     At all relevant times, Blackbaud knew the data it stores was vulnerable to cyberattack. In its 2019 Annual Report, Blackbaud specifically addressed its known susceptibility to cyberattacks. Specifically, the report states:

> *If the security of our software is breached, we fail to securely collect, store and transmit customer information, or we fail to safeguard confidential donor data, we could be exposed to liability, litigation, penalties and remedial costs and our reputation and business could suffer.*
>
> Fundamental to the use of our solutions is the secure collection, storage and transmission of confidential donor and end user data and transaction data, including in our payment services. Despite the network and application security, internal control measures, and physical security procedures we employ to safeguard our systems, **we may still be vulnerable to a security breach, intrusion, loss or theft of confidential donor data and transaction data, which may harm our business, reputation and future financial results.** [Emphasis Added].
>
> Like many major businesses, we are, from time to time, a target of cyber- attacks and phishing schemes, and we expect these threats to continue. Because of the numerous and evolving cybersecurity threats, including advanced and persistent cyber-attacks, phishing and social engineering schemes, used to obtain unauthorized access, disable or degrade systems have become increasingly more complex and sophisticated **and may be difficult to detect for periods of time, we may not anticipate these acts or respond adequately or timely**... [Emphasis Added]…
>
> Further, the existence of vulnerabilities, even if they do not result in a security breach, may harm client confidence and require substantial resources to address, and we may not be able to discover

or remedy such security vulnerabilities before they are exploited, which may harm our business, reputation and future financial results. [6]

23.    Because of the highly sensitive and personal nature of the information Defendant maintains, manages, and secures with respect to its clients and their users, Defendant has acknowledged to their clients and users that this information will be comprehensively secured.

24.    Blackbaud's Privacy Policy North America ("Privacy Policy") expressly applies as follows:

> At Blackbaud, we are committed to protecting your privacy. This Policy applies to Blackbaud's collection and use of personal data in connection with our marketing and provision of the Blackbaud Solutions, customer support and other services (collectively, the "Services"), for example if you are a customer, visit the website, interact with us at industry conferences, or work for a current or prospective customer of the Services.
>
> If you're a constituent, supporter, patient or student of one of our customers, to which we provide the Services, your data will be used in accordance with that customer's privacy policy. In providing the Services, Blackbaud acts as a service provider and thus, this Policy will not apply to constituents of our customers.[7]

25.    With regard to securing its constituents, supporters, patients or students of one of Defendant's customers, Defendant further represents with regard to the security of personal information:

> We restrict access to personal information collected about you at our website to our employees, our affiliates' employees, those who are otherwise specified in this Policy or others who need to know that information to provide the Services to you or in the course of conducting our business operations or activities. While no website can guarantee exhaustive security, we maintain appropriate physical, electronic and procedural safeguards to protect your personal information collected via the website. We protect our databases with various physical, technical and procedural measures and we restrict access to your information by unauthorized persons.

---

[6] https://investor.blackbaud.com/static-files/9cd70119-4c13-4d47-b068-3c228c580417 (last accessed Sept. 25, 2020).
[7] https://www.blackbaud.com/company/privacy-policy/north-america (last accessed Sept. 25, 2020).

> We also advise all Blackbaud employees about their responsibility to protect customer data and we provide them with appropriate guidelines for adhering to our company's business ethics standards and confidentiality policies. Inside Blackbaud, data is stored in password-controlled servers with limited access.[8]

26.     Blackbaud has made additional commitments to the maintenance of student's private information. In April of 2015 with regard to its K-12 school providers, Defendant signed a pledge to respect student data privacy to safeguard student information. The Student Privacy Pledge, developed by the Future of Privacy Forum (FPF) and the Software & Information Industry Association (SIIA), was created to "safeguard student privacy in the collection, maintenance and use of personal information."[9]

27.     In signing the Student Privacy Pledge, Blackbaud specifically represented to students and parents of its K-12 school providers that it would, *inter alia*, (1) "[m]aintain a comprehensive security program:" and (2) "[b]e transparent about collection and use of student data."[10]

28.     In further support of this representation and promise to student and parent users, Travis Warrant, president of Blackbaud's K-12 Private Schools Group, stated:

> Blackbaud is committed to protecting sensitive student data and security… The Pledge will better inform our customers, service providers and the general public of our dedication to protecting student privacy." The Pledge details ongoing industry practices that meet (and in some cases, exceed) all federal requirements, and encourages service providers to more clearly articulate their data privacy practices.[11]

---

[8] *Id.*

[9]     https://www.blackbaud.com/home/2015/04/22/blackbaud-signs-pledge-to-respect-student-data-privacy     (last accessed Sept. 25, 2020.

[10] *Id.*

[11] *Id.*

29.     Despite its duties, representations and promises, Defendant failed to adequately secure and protect numerous K-12 providers and thousands of students Private Information, by allowing the Private Information to be copied and potentially used or sold at a later date.

30.     Further, due to the Health Information Portability and Accountability Act (HIPPA), Defendant had additional obligations to secure patient users' information for healthcare Clients.

31.     Defendant has further failed Plaintiff and Class Members by failing to adequately secure and protect their PII and PHI, by allowing the PII and PHI to be copied and potentially used or sold at a later date.

32.     Defendant further failed Plaintiff and Class Members by failing to adequately notify them of the ransomware attack or provide any remedy other than belated and inadequate notice.

## RANSOMWARE ATTACK AND DATA BREACH

33.     Prior to the ransomware attack and data breach, clients, constituents, supporters, patients, and students provided sensitive and identifying Private Information to Blackbaud as part of, *inter alia*, seeking education from K-12 school providers and universities; seeking healthcare from healthcare providers; making donations to non-profit companies; and in other ways seeking services through Blackbaud's clients. When providing such information, these individuals had the expectation that Defendant, as the manager and securer of this Private Information, would maintain security against hackers and cyberattacks.

34.     Defendant maintained Plaintiff and Class Members' Private Information on a shared network, server, and/or software. Despite its own awareness of steady increases of cyberattacks on health care, schools, and other facilities over the course of recent years, Defendant did not maintain adequate security of Plaintiff and Class Members' data, to protect against hackers and cyberattacks.

35.     According to its own statements, in May of 2020, Defendant discovered a ransomware attack that attempted to "disrupt business by locking companies out of their own data and servers."[12]  According to Defendant's statements:

> After discovering the attack, our Cyber Security team—together with independent forensics experts and law enforcement—successfully prevented the cybercriminal from blocking our system access and fully encrypting files; and ultimately expelled them from our system. Prior to our locking the cybercriminal out, the cybercriminal removed a copy of a subset of data from our self-hosted environment. The cybercriminal did not access credit card information, bank account information, or social security numbers. Because protecting our customers' data is our top priority, we paid the cybercriminal's demand with confirmation that the copy they removed had been destroyed. Based on the nature of the incident, our research, and third party (including law enforcement) investigation, we have no reason to believe that any data went beyond the cybercriminal, was or will be misused; or will be disseminated or otherwise made available publicly… The subset of customers who were part of this incident have been notified and supplied with additional information and resources. We apologize that this happened and will continue to do our very best to supply help and support as we and our customers jointly navigate this cybercrime incident.[13]

36.     Upon information and belief, the ransomware attack began on approximately February 7, 2020 and continued for approximately three months until it was discovered on May 14, 2020.

37.     Although Defendant claims that social security numbers, credit card information, and/or bank account information were not accessed, the Notices advise individuals whose PII and PHI was accessed to, *inter alia*, "proactively monitor their child's account statements, bills and notices for any unusual activity and to promptly report any concerns…"  *See* Exhibit A.

---

[12] https://www.blackbaud.com/securityincident (Last Accessed August 12, 2020).
[13] *Id.*

38.     Defendant did not have a sufficient process or policies in place to prevent such cyberattack, which is evident by its own statements that it has "already implemented changes to prevent this specific issue from happening again."[14]

39.     The acknowledged types of data which "may" have been exposed included Minor Child's "first and last name, contact information (such as home address, phone number and email), certain demographic information (including date of birth, guarantor information, and internally generated patient ID numbers), the dates of treatment, the locations of service, and the name of the treating physician. The information may also have included the name and relationship of your child's guarantor…" *See* Exhibit A.

40.     Defendant cannot reasonably rely on the word of data thieves or any "certificate of destruction" issued by those same thieves, that the copied subset of any Private Information was destroyed. Further, Defendant cannot be assured that Social Security numbers, Bank Account numbers, and Credit Card numbers were not also accessed and retained by the data thieves, or it would not have advised its clients to advise affected individuals to monitor accounts for suspicious activity. Despite recognizing the need for monitoring and heightened risk, Defendant has failed to offer its clients or their users any mitigation or remedy, including credit monitoring.

41.     Despite having knowledge of the attack since at least May of 2020, Defendant did not notify its affected clients until July or August of 2020 of the compromised data.

42.     Defendant has had obligations and duties created by state and federal law, contracts, industry standards, common law, and privacy representations made to Plaintiff and Class Members, to keep their PII and PHI confidential and to protect it from unauthorized access and disclosure.

---

[14] https://www.blackbaud.com/securityincident (last accessed Sept. 25, 2020).

43.     Plaintiff and Class Members provided their PII and PHI to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

44.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in its client's various industries preceding the date of the breach.

45.     Indeed, cyberattacks have become so notorious that as recently as November 2019, the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issued warnings to potential targets so they are aware of, and prepared for, a potential attack.[15]

46.     The increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including by Defendant's own admissions in its 2019 Annual Report.

47.     Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard Defendant's computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.    Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.    Failing to adequately protect class members' PII and PHI;

c.    Failing to properly monitor their own data security systems for existing intrusions;

d.    Failing to timely notify its Clients, Plaintiff, and Class Members of the data breach; and

e.    In other such ways yet to be discovered.

---

[15] https://www.law360.com/consumerprotection/articles/1220974/fbj-secret-service-warn-of-targeted-ransomware (emphasis added) (last accessed Sept. 25, 2020).

48.     As the result of Defendant's failure to take certain measures to prevent the attack until after the attack occurred, Defendant negligently and unlawfully failed to safeguard Plaintiff and Class Members' PII and PHI.

49.     Accordingly, as outlined below, Plaintiff and Class Members' daily lives have been severely disrupted. Now Plaintiff and Class Members face an increased risk of fraud and identity theft.

## CYBERATTACKS AND DATA BREACHES CAUSE DISRUPTION AND PUT CONSUMERS AT AN INCREASED RISK OF FRAUD AND IDENTIFY THEFT

50.     Cyberattacks and data breaches of medical facilities, schools, and non-profit entities are especially problematic because of the disruption they cause to the overall daily lives of patients, students, donors, and other individuals and entities affected by the attack.

51.     The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") finding that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[16]

52.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (**consider an extended fraud alert that lasts for seven years** if someone steals their identity), report identity theft to the FTC, reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[17]

---

[16] *See* "Data Breaches are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p.2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last accessed Sept. 25, 2020) ("GAO Report").
[17] *See* https://www.identitytheft.gov/Steps (last accessed Sept. 25, 2020).

53.    Identity thieves use stolen Private Information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

54.    Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name, but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, seek unemployment or other benefits, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name. A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:[18]



Americans' expenses/disruptions as a result of criminal activity in their name (2016)

| | |
|---|---|
| I had to request government assistance | 29.5% |
| I had to borrow money | 60.7% |
| Had to use my savings to pay for expenses | 32.8% |
| Couldn't qualify for a home loan | 32.8% |
| I lost my home/place of residence | 31.1% |
| I couldn't care for my family | 34.4% |
| Had to rely on family/friends for assistance | 49.2% |
| Lost out on an employment opportunity | 44.3% |
| Lost time away from school | 19.7% |
| Missed time away from work | 55.7% |
| Was generally inconvenienced | 73.8% |
| Other | 23% |
| None of these | 3.3% |

Source: Identity Theft Resource Center                                      creditcards-com

---

[18] "Credit Card and ID Theft Statistics" by Jason Steele, 10/24/2017, at: https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php (last accessed Sept. 25, 2020).

55.     Private Information is a valuable property right.[19] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. This obvious risk to reward analysis illustrates that Private Information has considerable market value.

56.     Notably, one study on website privacy determined that U.S. consumers valued the restriction of improper access to their personal information – the very injury at issue here – between $11.33 and $16.58 per website. Furthermore, the study determined that "[a]mong U.S. subjects, protection against errors, improper access, and secondary use of personal information is worth US$30.49 – 44.62."[20]

57.     It must also be noted there may be a substantial time lag—measured in years— between when harm occurs versus when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

---

[19] *See, e.g.,* John T. Soma, et al., Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[20] Hann, Hui, *et al*, The Value of Online Information Privacy: Evidence from the USA and Singapore, at 17. Oct. 2002, *available at* https://www.comp.nus.edu.sg/ ~ipng/research/privacy.pdf (last visited Sept. 28, 2020).

58.     Private Information, Private Health Information, and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

59.     There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, as the Notice advises, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.  *See* Exhibit A.

## PLAINTIFF AND CLASS MEMBERS' DAMAGES

60.     To date, Defendant has done nothing to provide Plaintiff and Class Members with relief for the damages they have suffered as a result of the Data Breach including, but not limited to, the costs of credit monitoring, as well as costs and loss of time they incurred because of the data breach.

61.     Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

62.     The Private Information of Plaintiff was compromised as a direct and proximate result of the Data Breach. While the compromise of this information was known as early as May of 2020, Plaintiff did not receive Notice until August 30, 2020.  *See* Exhibit A.

63.     Like Plaintiff, other Class Members' Private Information and Private Health Information was compromised as a direct and proximate result of the Data Breach.

64.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

65.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

66.     Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

67.     Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

68.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

69.     Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

70.     Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial, student, and medical accounts and records for misuse.

71.     Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach.  Like Plaintiff, many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

      a.   Finding fraudulent charges;

      b.   Canceling and reissuing credit and debit cards;

c.  Purchasing credit monitoring and identity theft prevention;

d.  Addressing their inability to withdraw funds linked to compromised accounts;

e.  Taking trips to banks and waiting in line to obtain funds held in limited accounts;

f.  Placing "freezes" and "alerts" with credit reporting agencies;

g.  Spending time on the phone with or at a financial institution to dispute fraudulent charges;

h.  Contacting financial institutions and closing or modifying financial accounts;

i.  Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

j.  Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

k.  Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

72.  Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing personal and financial information is not accessible online and that access to such data is password-protected.

73.  Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the knowledge that their Private Information or Private Health Information—which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of their fundamental right to privacy.

74.     As many of the purchasers of Private Information or Private Health Information do not utilize the information for years, Plaintiff and Class Members are forced for long periods of time to endure the fear of whether their information will be used.

75.     As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## CLASS ACTION ALLEGATIONS

76.     Plaintiff brings this action on behalf of himself and all other persons similarly situated (the "Class").

77.     Plaintiff proposes the following Class definition, subject to amendment and potential subclasses as appropriate:

> All individuals in the United States whose personal information was compromised in the Blackbaud data breach which occurred in May 2020.

Excluded from the Class is Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

78.     Numerosity. The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, based on information and belief, the class consists of approximately hundreds of thousands of persons and entities whose data was compromised in the Data Breach.

79.     Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information and/or Private Health Information;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Defendant owed a duty to Class Members to safeguard their Private Information and/or their Private Health Information;

f. Whether Defendant breached its duty to Class Members to safeguard their Private Information and /or their Private Health Information;

g. Whether computer hackers obtained, sold, copied, stored or released Class Members' Private Information and/or Private Health Information;

h. Whether Defendant knew or should have known that their data security systems and monitoring processes were deficient;

i. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct; and

j. Whether Defendant failed to provide notice of the Data Breach in a timely manner.

80.     <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was compromised in the Data Breach.

81.     <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

82.    <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff and Class Members' data was stored on the same computer systems and allowed to be unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members, as described *supra*, predominate over any individualized issues. Adjudication of the common issues in a single action has important and desirable advantages of judicial economy.

83.    <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most class members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each class member.

84.    Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

<u>**FOR A FIRST CAUSE OF ACTION**</u>
**NEGLIGENCE**
(On Behalf of Plaintiff and All Class Members)

85.    Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

86.     Defendant's Clients required Plaintiff and Class Members to submit non-public personal information in order to obtain medical, educational, and other services. Defendant had a duty to its Clients, Plaintiff, and Class Members to securely maintain the PII and PHI collected as promised and warranted.

87.     By accepting the duty to maintain and secure this data in its computer property, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer systems—and Plaintiff's and Class Members' PII and PHI held within it—to prevent disclosure of the information, and to safeguard the information from cyber theft. Defendant's duty included a responsibility to implement processes by which it could detect and prevent a breach of its security systems in an expeditious manner and to give prompt notice to those affected by a data breach and/or ransomware attack.

88.     Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected and safeguarded the PII and PHI of the Class.

89.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its Clients and Users, which is recognized by Defendants' Policy Notice North America, as well as laws and regulations. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a ransomware attack and/or data breach.

90.     Defendant had a specific duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . .

practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

91.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Personal Identifiable Information.

92.     Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Personal Identifiable Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Personal Identifiable Information and/or Private Health Information;

    b.  Failing to adequately monitor the security of their networks and systems;

    c.  Failure to periodically ensure that their email system had plans in place to maintain reasonable data security safeguards;

    d.  Allowing unauthorized access to Class Members' Personal Identifiable Information and/or Private Health Information; Failing to detect in a timely manner that Class Members' Personal Identifiable Information and/or Private Health Information had been compromised; and

    e.  Failing to timely notify Class Members about the Data Breach and Ransomware Attack so those put at risk could take timely and appropriate steps to mitigate the potential for identity theft and other damages.

93.     It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' PII and PHI would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of ransomware attacks and data breaches in the Clients' various industries.

94.     It was therefore foreseeable that the failure to adequately safeguard Class Members' PII and PHI would result in one or more types of injuries to Class Members.

95.     Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

96.     Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.,* (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members, and any other relief this count deems just and proper.

**FOR A SECOND CAUSE OF ACTION**
**UNJUST ENRICHMENT**
(On Behalf of Plaintiff and All Class Members)

97.     Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

98.     Plaintiff and Class Members have an interest, both equitable and legal, in the PII about them that was conveyed to, collected by, and maintained by Blackbaud and that was ultimately accessed or compromised in the Blackbaud Data Breach.

99.     Blackbaud benefitted by the conferral upon it of the PII pertaining to Plaintiff and Class Members and by its ability to retain and use that information. Blackbaud understood that it was in fact so benefitted.

100.     Blackbaud also understood and appreciated that the PII pertaining to Plaintiff and Class Members was private and confidential and its value depended upon Blackbaud maintaining the privacy and confidentiality of that PII.

101.    Plaintiff and the Class's PII would not have been transferred to and entrusted with Blackbaud but for its express and implied commitments to its clients that the PII would be maintained safely and securely.

102.    As a result of Blackbaud's wrongful conduct as alleged in this Complaint (including among other things its utter failure to employ adequate data security measures, its continued maintenance and use of the PII belonging to Plaintiff and Class Members without having adequate data security measures, and its other conduct facilitating the theft of that PII), Blackbaud has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

103.    Blackbaud's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' sensitive PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identify thieves.

104.    Under the common law doctrine of unjust enrichment, it is inequitable for Blackbaud to be permitted to retain the benefits it received, and is still receiving, without justification, from the use of Plaintiff and Class Members' PII in an unfair and unconscionable manner. Blackbaud's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

105.    The benefit conferred upon, received, and enjoyed by Blackbaud was not conferred officiously or gratuitously, and it would be inequitable and unjust for Blackbaud to retain the benefit.

106.    Blackbaud is therefore liable to Plaintiff and Class Members for restitution in the amount of the benefit conferred on Blackbaud as a result of its wrongful conduct, including

specifically the value to Blackbaud of the PII that was stolen in the Blackbaud Data Breach and the profits Blackbaud received from the use of that information.

## FOR A THIRD CAUSE OF ACTION
### DECLARATORY JUDGMENT
(On Behalf of Plaintiff and All Class Members)

107.    Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

108.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

109.    An actual controversy has arisen in the wake of the Blackbaud Data Breach regarding Plaintiff's and Class Members' PII and whether Blackbaud is currently maintaining data security measures adequate to protect Plaintiff's and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Blackbaud's data security measures remain inadequate. Blackbaud denies these allegations. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of her PII and remains at imminent risk that further compromises of her PII will occur in the future.

110.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

111.    Blackbaud owes a legal duty to secure consumers' PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, HIPAA, and various state statutes; and

112.    Blackbaud continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII.

113.    This Court also should issue corresponding prospective injunctive relief requiring Blackbaud to employ adequate security protocols consistent with law and industry standards to protect consumers' PII.

114.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Blackbaud. The risk of another such breach is real, immediate, and substantial. If another breach at Blackbaud occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

115.    The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Blackbaud if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Blackbaud of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Blackbaud has a pre-existing legal obligation to employ such measures.

116.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Blackbaud, thus eliminating the additional injuries that would result to Plaintiff and consumers whose confidential information would be further compromised.

## FOR A FOURTH CAUSE OF ACTION
### NEGLIGENCE *PER SE*
(On Behalf of Plaintiff and All Class Members)

117.    Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

118.     Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information and Private Health Information.

119.     Pursuant to the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), Defendant had a duty to protect the security and confidentiality of Plaintiff's and Class Members' Private Information and Private Health Information.

120.     Defendant breached its duties to Plaintiff and Class Members under the Federal Trade Commission Act and the Gramm-Leach-Bliley Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

121.     Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

122.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff's and Class Members' data would not have been stolen and they would not have been harmed.

123.     The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information, including increased risk of identity theft.

124.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff on behalf of himself and all other similarly situated, prays for relief as follows:

      a.      For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

      b.      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

      c.      For damages in an amount to be determined by the trier of fact;

      d.      For an order of restitution and all other forms of equitable monetary relief;

      e.      Declaratory and injunctive relief as described herein;

      f.      Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

      g.      Awarding pre- and post-judgment interest on any amounts awarded; and,

      h.      Awarding such other and further relief as may be just and proper.

## **JURY TRIAL DEMAND**

A jury trial is demanded on all claims so triable.

Dated: December 18, 2020          Respectfully submitted,

**RICHARDSON, PATRICK,**
**WESTBROOK & BRICKMAN, LLC**

/s/ T Christopher Tuck.
T. Christopher Tuck, ID No.: 9135
E-mail:  ctuck@rpwb.com
T.A.C. Hargrove, II, ID No.: 12487
E-mail: thargrove@rpwb.com
1037 Chuck Dawley Blvd.
Building A

Mt. Pleasant, SC  29464
843-727-6500 – Telephone
843-216-6509 – Facsimile

**PENDING ADMISSION *PRO HAC VICE***

**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner
Email: BBleichner@chestnutcambronne.com
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401-2138
612-339-7300 – Telephone
612-336-2940 – Facsimile

**HELLMUTH & JOHNSON PLLC**
Nathan D. Prosser
Email: NProsser@hjlawfirm.com
8050 West 78th Street
Edina, MN 55439
952-941-4005 – Telephone
952-941-2337 – Fax

**ATTORNEYS FOR PLAINTIFF**